UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Hon. Joseph H. Rodriguez |
| *Plaintiff*, | : | CRIM NO. 1:18-cr-00652 |
| v. | : | **OPINION** |
| AHMAD GRIER, | : | |
| *Defendant*. | : | |

This matter comes before the Court on Defendant Ahmad Grier's *pro se* Motion for Companionate Release under the First Step Act 18 U.S.C. § 3582 (c)(1)(A)(i). [Dkt. No. 26]. The Court has considered the parties' written submissions and, for the reasons stated below, will deny Defendant's Motion.

On March 19, 2019, Defendant Grier pled guilty to a three-count indictment that charged him with one count of possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1); one count of possession of heroin (a Schedule I controlled substance) and cocaine (Schedule II) with intent to distribute under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and one count of possession of a firearm during and in relation to a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A)(i). [Dkt. 17–19]. On January 22, 2020, this Court sentenced Defendant to sixty-one (61) months in prison and three years of supervised release pursuant to a plea agreement between Defendant Grier and the Government. [Dkt. 20]. This sentence was twenty-nine to thirty-six (29–36) months shorter than the Federal Sentencing Guidelines' recommended range of ninety to ninety-seven (90–97) months. Defendant Grier is currently serving his sentence at FCI-Schuylkill.

With credit for good time, Defendant Grier is eligible for early release on September 21, 2022.[1] Before filing this motion, Defendant Grier applied to the Bureau of Prisons ("BOP") for compassionate release. On April 16, 2020, Warden Scott Finely denied that request, and rejected Grier's appeal of that denial on May 4, 2020. [Dkt. 26-1 at 8–10].

Defendant Grier now moves the Court for compassionate release or home confinement due to the ongoing COVID-19 pandemic and the risk it poses to him and his mother. Defendant Grier is thirty-three (33) years old and claims that COVID-19 jeopardizes his wellbeing due to his "respiratory problems" and "other medical issues that are documented in my PSI report." [*Id.* at 2–3]. Defendant Grier argues that the BOP's COVID-19 protocol cannot ensure his safety while incarcerated, [*Id.* at 4], especially due to the living conditions at FCI-Schuylkill. [*Id.* at 6]. Grier further alleges that his sixty-five-year-old mother who is diagnosed with Lupus lives in a COVID-19 "hot zone" in East Orange, New Jersey, and that her Lupus places her at higher risk for COVID-19 illness. [Dkt. 26-1 at 2]. Defendant Grier claims that, if released, he will reside with and care for his mother. [*Id.*].

Defendant Grier urges the Court to consider several other factors concerning his incarceration and potential release. First, he indicates that he became eligible for transfer to a halfway house in January 2021 and has since requested transfer. [*Id.* at 2]. Second, he claims that he has had no disciplinary actions while incarcerated. [*Id.*]. Third, he indicates that he has "guaranteed employment" available to him upon release. [*Id.* at 3]. Finally, he claims that if he is released to home confinement, he intends to attend and complete an H.V.A.C. certification program and obtain a CDL driver's license. [*Id.* at 3].

---

[1] In the memoranda supporting his motion, Defendant Grier indicated that he "put in" to be relocated to a halfway house in January 2021. Dkt. 30 at 11.

The Government opposes Defendant's motion. The Government argues that Defendant Grier has failed to show an "extraordinary and compelling reason" for release, and that the sentencing factors set forth in 18 U.S.C. § 3553(a) militate against release due to the nature of Grier's offense and his history of criminal convictions. [Dkt. No. 29]. The Government argues that Defendant Grier has failed to establish "extraordinary and compelling reasons" because he has not shown that his risk of harm due to COVID-19 will diminish if he is released to his home in East Orange, New Jersey. The Government therefore argues that "his re-entry plan does not present a safer alternative and thus does not warrant compassionate release." [Dkt. 29 at 12]. The Government further details the BOP's response to the Covid-19 pandemic and argues that BOP—including FCI Schuylkill—has made significant efforts to protect its inmates from this illness. In addition to its Pandemic Influenza Plan, in effect since 2012, BOP "began to modify its operations, in accordance with its Coronavirus (COVID-19) Action Plan ('Action Plan'), to minimize the risk of COVID-19 transmission into and inside its facilities, as of March 13, 2020." [Dkt. 29 at 2]. BOP continues to revise the Action Plan to address the on-going crisis.[2] Finally, the Government argues that the "seriousness of the offense" and "deterrence" sentencing factors of 18 U.S.C. § 3553(a) weigh against compassionate release.

I.  **Legal Framework**

Generally, a district court may not modify a term of imprisonment once it has been imposed, unless the case falls under one of the limited exceptions under the First Step Act ("the Act"). Pursuant to the Act, a court may modify an imposed term of imprisonment—

(1) in any case—

   (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a

---

[2] Details and updates of BOP's operations are available on the BOP website: www.bop.gov/coronavirus/.

>motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>>(i) extraordinary and compelling reasons warrant such a reduction; or
>>
>>(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
>>(B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

18 U.S.C. § 3582(c).

The Sentencing Commission issued a policy statement concerning reduction in term of imprisonment under the Act, which provides in pertinent part, that after considering applicable factors set forth in 18 U.S.C. § 3553(a), the "the court may reduce a term of imprisonment if the court determines that—Extraordinary and compelling reasons warrant the reduction . . . the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and the reduction is consistent with this policy statement." U.S.S.G. 1B1.13. As set forth in the policy statement, a defendant's medical condition may qualify as an extraordinary and compelling reason, if the defendant is suffering from a terminal illness or the defendant is,

>(C) suffering from a serious physical or medical condition,
>
>(D) suffering from a serious functional or cognitive impairment, or

>> (E) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* Additional circumstances that may qualify include, the age of the defendant, family circumstances, and other reasons. *Id.*

## II. Discussion

There is no dispute that Defendant Grier is eligible for this Court's consideration of his compassionate release motion. Thus, the question before the Court is whether extraordinary and compelling reasons warrant release. The Court finds that Defendant Grier has failed to demonstrate extraordinary and compelling reasons for release.

In order to bring a claim for compassionate release, an inmate must first exhaust his administrative remedies by petitioning the BOP for release. 18 U.S.C. § 3582(c)(1)(A). Defendant Grier satisfied this procedural requirement because he applied to the BOP for release, and Warden Scott Finely denied the application. [Dkt. 26-1 at 8–10]. The Court therefore turns to the merits of Defendant Grier's request.

At the outset, this Court acknowledges the seriousness of the COVID-19 virus generally, and the ongoing COVID-19 challenges at FCI-Schuylkill. Courts have recognized that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (citation omitted). *See also COVID-19 Coronavirus*, Federal Bureau of Prison, https://www.bop.gov/coronavirus/ (last visited January 4, 2021). However, despite the BOP's efforts, the spread of COVID-19 is no longer a mere "possibility" at FCI-Schuylkill. As Defendant outlines in his January 5, 2021 Reply brief, FCI-Schuylkill has

experienced a recent outbreak of COVID-19 infections which has threatened inmates' mental and physical health, limited their day-to-day activities, and restricted their contact with the outside world. [Dkt. 30 at 2].

BOP statistics confirm that an alarming number of inmates and BOP staff have contracted COVID-19, and that social visits to the facility are suspended. *COVID-19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (indicating fourteen active inmate cases, fourteen active staff, and 240 recovered inmate cases as of February 2, 2021); *FCI Schuylkill*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/sch/ ("All visiting at this facility has been suspended until further notice) (last visited Feb. 2, 2021). According to those statistics, approximately 25% of FCI-Schuylkill's 1,000 inmates currently have or have recovered from COVID-19 infections. *See id.* The media has also documented the spread of COVID-19 at FCI-Schuylkill, and the toll that this outbreak has taken on inmates and their day-to-day lives. Emily Graham, *Wives worry about FCI/Schuylkill COVID-19 conditions*, News Break (Jan. 13, 2021), https://www.newsbreak.com/news/2143633689610/wives-worry-about-fcischuylkill-covid-19-conditions.

The Court is sympathetic to the risks and challenges confronting Defendant Grier at FCI-Schuylkill due to the COVID-19 outbreak.[3] But this outbreak at FCI-Schuylkill does not by itself warrant release. As one court has summarized this Court's predicament, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *United States v. Wright*, No. CR-16-214-04, 2020 WL

---

[3] The Court also agrees with Defendant Grier that the lack of inmate fatalities at FCI-Schuylkill does not mean that Grier—or any other inmates at FCI-Schuylkill—are less susceptible to infection or illness due to COVID-19. [Dkt. 30 at 6; *see also* Dkt. 29 at 12].

1976828, at *5 (W.D. La. Apr. 24, 2020) (footnote omitted). Instead, the Court must determine whether Defendant Grier's health or medical conditions present an extraordinary and compelling reason for reducing Grier's sentence in light of the conditions at FCI-Schuylkill. *See United States v. Hynes*, No. 3:18-CR-00222, 2020 WL 6060984, at *3 (D.N.J. Oct. 14, 2020).

In making this determination, courts look to those conditions the CDC has identified as "high-risk" factors. *See, e.g.*, *United States v. Catanzarite*, No. CR 18-0362 (ES), 2020 WL 2786927, at *4 (D.N.J. May 29, 2020). Defendant Grier—a thirty-three-year-old man—concedes that he is "healthy and pray[s] to god that [he] remain[s] that way." [Dkt. 30 at 7]. He does not claim to suffer from any condition on the CDC's list of high-risk conditions.[4] *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited January 4, 2021) ("CDC Certain Medical Conditions"). Defendant Grier claims that he suffers from groin pain due to a gunshot. He also claims that he has respiratory difficulties but does not identify any specific condition or diagnosis. Defendant Grier's "general allegations of medical condition[s], without the necessary specificity, are insufficient to establish the rare circumstances that would justify a grant of compassionate release." *United States v. Carazolez*, Crim. No. 18-0081, 2020 WL 5406161, at *4 (D.N.J. Sept. 9, 2020).

Moreover, while the CDC has found that certain respiratory conditions—such as emphysema and asthma—may increase the risk of severe illness from COVID-19, *see* CDC Certain Medical Conditions, Defendant Grier has not argued or presented evidence that he suffers from any of these enumerated respiratory ailments. *See United States v. Coles*, 455 F. Supp. 3d 419, 425 (E.D. Mich. 2020) (denying compassionate release request where defendant

---

[4] Defendant Grier's pre-sentence report similarly does not indicate that he suffers from any of these enumerated conditions.

provided no evidence to support his claim that he "suffers from asthma"). Because he has not shown that he suffers from one of these enumerated "high risk" health conditions, Defendant Grier's health complications do not present a compelling reason for release.

Defendant Grier's family circumstances also fail to establish an extraordinary and compelling reason for release. Generally, family circumstances qualify as extraordinary and compelling reasons in the event of: "The death or incapacitation of the caregiver of the defendant's minor child or minor children. The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G § 1B1.13 n.1(C). Grier's mother's Lupus diagnosis does not meet one of these enumerated factors and therefore does not justify Defendant Grier's release.

Even if Defendant's medical and family circumstances presented extraordinary and compelling circumstances for compassionate release, "a court may deny the requested relief if the 18 U.S.C. § 3553(a) factors do not weigh in favor of the defendant's release." *United States v. Adams*, No. 3:00-CR-00697, 2020 WL 6063055, at *5 (D.N.J. Oct. 14, 2020) (citing *United States v. Pawlowski*, 967 F.3d 327 (3d Cir. 2020)). In this case, § 3553(a)'s factors weigh against granting Defendant Grier's request.

First, Defendant Grier's drug and multiple firearms offenses are serious offenses. Defendant Grier admitted that he participated in the lethal opioid epidemic that kills thousands of people in New Jersey every year by possessing cocaine and heroin and intending to distribute those substances. *See New Jersey: Opioid-Involved Deaths and Related Harms*, Nat'l Inst. of Health, https://www.drugabuse.gov/drug-topics/opioids/opioid-summaries-by-state/new-jersey-opioid-involved-deaths-related-harms (last visited Jan. 29, 2021); *NJ Cares: A Realtime Dashboard of Opioid-Related Data and Information*, N.J. Off. Att'y Gen.,

https://www.nj.gov/oag/njcares/ (last visited Jan. 29, 2021). He also admitted to using a firearm in connection with his drug distribution activities. Defendant Grier also has seven prior convictions, including convictions for other drug distribution charges and assault. [*See* PSR at 9–14].

Accordingly, Defendant Grier presents a danger to the community, and the Court finds that releasing him at this time would not reflect the seriousness of his offense or promote respect for the law. To be sure, courts in this circuit and elsewhere have denied compassionate release to defendants incarcerated for drug distribution and related firearms charges. *See, e.g.*, *United States v. Rivers*, No. 3:17-CR-00539, 2021 WL 168516, at *3 (D.N.J. Jan. 19, 2021) (denying compassionate release to defendant who pled guilty with possession with intent to distribute); *United States v. Brant*, 464 F. Supp. 3d 898, 899 (E.D. Mich. 2020), *on reconsideration*, No. 218CR20155TGBMKM1, 2020 WL 3605282 (E.D. Mich. July 2, 2020) (denying compassionate release to defendant who pled guilty to charges of felon-in-possession of a firearm, possession of controlled substances with intent to distribute, and possession of a firearm in furtherance of a drug trafficking crime despite his severe asthma diagnosis).

Moreover, granting Defendant Grier's early release would not reflect the seriousness of his offense, and would not adequately deter similar conduct in the future. Defendant Grier's sixty-one moth sentence is twenty-nine to thirty-six months shorter than the term which the Federal Sentencing Guidelines recommended. Grier has only served approximately thirty-three months of this sentence. This Court, like courts elsewhere, finds that further reducing Grier's sentence would detract from the seriousness of this offense, and reduce the deterrent effect of his sentence. *See, e.g.*, *Rivers*, 2021 WL 168516, at *3 (denying compassionate release due to deterrence concerns because the court already granted a downward variance at sentencing).

Ultimately, the court finds that the § 3553(a) sentencing factors weigh against compassionate release. The Court therefore denies Defendant Grier's motion.

### III. Home Confinement

Defendant Grier also moves the Court to release him from prison and transfer him to home confinement. [*See* Dkt. 26-1 at 2]. To the extent this motion seeks relief distinct from Defendant's request for compassionate release, the Court construes this motion as a request for transfer to home confinement under 18 U.S.C. § 3624. However, "the Court has no authority to grant release or transfer to home confinement under § 3624." *United States v. Rountree*, 460 F. Supp. 3d 224, 230 (N.D.N.Y. 2020) (collecting cases); *see also* 18 U.S.C. § 3624(c)(2) (granting to the Bureau of Prisons the authority to order home confinement). As such the Court denies Defendant Grier's motion for home confinement.

### IV. Constitutional Claims

In his Reply brief, Defendant Grier discusses the Supreme Court case *Helling v. McKinney*, which held that inmates may invoke their Eighth Amendment rights against cruel and unusual punishment based on the risk of future injury from contagious diseases while in prison. [Dkt. 30 at 6] (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). The Court understands Grier to have discussed *Helling* to support his request for compassionate release request under 18 U.S.C. § 3582, and not to claim separately that Grier's risk of contracting COVID-19 has violated his Eighth Amendment rights. While the Court recognizes its obligation to construe pro se pleadings liberally, *United States v. Miller*, 197 F.3d 644, 648 (3d Cir. 1999), it is reluctant to convert Defendant Grier's motion for compassionate release into an Eighth Amendment claim based on this passing reference in his reply brief, and where Grier has not identified the legal

basis for his Eighth Amendment claim or fully briefed his position.[5]  The Court therefore takes no position with respect to Defendant Grier's Eighth Amendment rights at this time.

## V. Conclusion

For the foregoing reasons, Defendant's Motion for Compassionate Release, pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), will be **denied**.  An accompanying order shall issue.

Dated: February 26, 2021                                      /s/ Joseph H. Rodriguez

                                                                                JOSEPH H. RODRIGUEZ, USDJ

---

[5] Inmates in this circuit have advanced Eighth Amendment claims through *Bivens* actions and petitions for habeas corpus.  *See United States v. Ashby*, No. 3:20-CV-0789, 2020 WL 2494679, at *4 (M.D. Pa. May 14, 2020) ("[R]elease from prison due to the COVID-19 virus [is] not a remedy that [is] available under Section 1983 or *Bivens*…." (citing *Parmeley v. Trump*, 2020 WL 1987366, *2 (S.D. Ill. April 27, 2020))); *Wragg v. Ortiz*, 462 F. Supp. 3d 476, 505 (D.N.J. 2020) (holding that the court lacked jurisdiction over petition for habeas corpus seeking release due to COVID-19 risk).